PIONEER PROPERTIES, INC., Plaintiff,

v.

Ross Lloyd MARTIN and The Genesis Marketing Organization Limited, Defendants.

No. 81–1137.

United States District Court, D. Kansas.

March 3, 1983.

Alexander B. Mitchell of Sargent, Klenda, Haag & Mitchell, Wichita, Kan., for plaintiff.

Monte Vines of Adams, Jones, Robinson & Malone, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

Plaintiff, a Kansas corporation with its principal place of business in Kansas, has filed this action against a Canadian citizen and corporation alleging violations of Section 12(2) of the Securities Act of 1933,[1] and Rule 10b–5[2] promulgated under Section 10 of the Securities Exchange Act of 1934.[3] In addition to alleging misleading and fraudulent statements in connection with the sale of securities as prohibited under these acts, plaintiff asserts pendant claims of common law fraud, breach of contract, and breach of fiduciary duties. The matter is before the court on defendants' motion to dismiss on jurisdictional and *forum non conveniens* grounds or, in the alternative, to stay proceedings pending arbitration. The parties have presented oral arguments, and have briefed the issues and filed with the court supporting affidavits and exhibits.

Plaintiff premises jurisdiction of the court on Section 22 of the 1933 Act[4] and Section 27 of the 1934 Act,[5] as well as on 28 U.S.C. § 1331 and 28 U.S.C. § 1332(a)(2). The complaint states that venue is proper under 28 U.S.C. § 1391(d), however, as we will discuss later, the above sections of the two securities acts contain applicable special venue provisions. The complaint also alleges personal jurisdiction under provisions of the Kansas long-arm statute, K.S.A. 60–308(b)(2) and (5).

The circumstances giving rise to this action involved plaintiff's purchase of interests in three joint ventures beginning in 1974. Three separate agreements pertaining to each joint venture were entered into between the defendants and plaintiff. Two of the ventures, the Eight Hundred Development Group and the Hampton Court Estates, were executed by written agreement. The third, the Cobourg venture, was by oral agreement. Similar joint venture agreements were also entered into between defendants and sixteen other investors, all of whom are Canadian citizens. The purpose of each venture was to develop and sell residential real estate properties located in Ontario, Canada. Under the terms of the agreements, defendants assumed management responsibilities for daily operation of the joint ventures while plaintiff and other investors provided whatever working capital was needed to maintain the properties and defray expenses. Each agreement also included an arbitration clause providing that any dispute arising under the joint ventures was to be arbitrated in Canada.

The motion to dismiss presents two theories for consideration. First, defendants challenge the presence of personal jurisdiction, arguing that the complaint should be dismissed for failure to satisfy a minimum contacts analysis under the Due Process

---

1. 15 U.S.C. § 77*l*(2).

2. 17 C.F.R. § 240 10b–5.

3. 15 U.S.C. § 78j.

4. As codified in 15 U.S.C. § 77v, the section provides in relevant part:

   "(a) The district Courts of the United States ... shall have jurisdiction of offenses and violations under this subchapter ... and ... of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. Any suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found...."

5. As codified, 15 U.S.C. § 78aa provides in relevant part:

   "The district Courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder ... may be brought in any such district ... and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found...."

clause of the Fifth Amendment. Second, defendants contend that even if jurisdiction is appropriate, the action should be dismissed under the traditional doctrine of *forum non conveniens* as set forth in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). As discussed more fully below, the facts as alleged by the parties, and the relevant case law, persuade the court that jurisdiction over the defendants is proper. However, the court is further persuaded that this is an appropriate case in which to stay further proceedings pending arbitration in a foreign jurisdiction.

## PERSONAL JURISDICTION

■ Extraterritorial service of process is authorized by Section 22 of the 1933 Act and Section 27 of the 1934 Act in the district where defendant is an inhabitant or wherever the defendant may be found, provided venue is properly laid within the forum under these sections. Where claims are made under both acts, proper venue may be determined according to the broader provisions of Section 27 which permit an action to be brought where any act or transaction connected with the alleged violation occurred. *Martin v. Steubner,* 485 F.Supp. 88, 90 (S.D.Ohio 1979) *cert. denied* 454 U.S. 1148, 102 S.Ct. 1013, 71 L.Ed.2d 302 (1982); *Burkhart v. Allson Realty Trust,* 363 F.Supp. 1286, 1292 (N.D.Ill.1973).

■ While the defendants do not contest venue in this district, or lack of subject matter jurisdiction, they nevertheless argue insufficient contacts with the state of Kansas prevent the assertion of *in personam* jurisdiction. Defendants rightly contend that in actions premised upon presence of a federal question the court's exercise of personal jurisdiction over foreign nationals is subject to constitutional constraints. It is well recognized that though the process provision of Section 27 permits service on a defendant in a foreign country, *SEC v. Briggs,* 234 F.Supp. 618 (N.D.Ohio 1964), the jurisdictional reach extends up to, but not beyond, the limits of the due process clause of the Fifth Amendment. *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (2d Cir.1972); *Ferraioli v. Cantor,* 259 F.Supp. 842, 847–48 (S.D.N. Y.1966).[6] The familiar due process limitation, as stated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), requires the defendant have certain minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158.

■ The facts of the case must demonstrate that it is reasonable to require defendant to defend itself in the forum state. *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980). This inquiry into defendants' connection with the forum and the litigation focuses on the quality and nature of the contacts. *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). While physical presence is not necessary, *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), a requisite nexus between the defendant and the forum requires some act by which defendant purposefully avails itself of the privilege of conducting activities within the forum state. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

These principles provide a broad framework within which to test the sufficiency of the contacts. In *Leasco Data Processing Corp. v. Maxwell, supra,* a decision which addressed the extraterritorial application of Section 27 in light of *Hanson v. Denckla, supra,* the court set forth a practical interpretation, stating: "[W]here a defendant has acted within a state or sufficiently caused consequences there, he may fairly be

6. There is no such limitation where service authorized by § 27 is properly performed outside the forum district yet within this country. Assuming proper venue, service is nationwide, and due process contacts analysis is unnecessary to establish personal jurisdiction. See *Mariash v. Morrill,* 496 F.2d 1138 (2nd Cir. 1974); *Garner v. Enright,* 71 F.R.D. 656 (E.D.N. Y.1976).

subjected to its judicial jurisdiction...." 468 F.2d at 1340. Applying this framework to the facts as set forth in the parties' pleadings, affidavits and attached exhibits, the court believes the assertion of jurisdiction over the defendants is fair and reasonable in this case.

In his affidavit, Zack Farha, the principal stockholder of plaintiff corporation, states that investments in the joint ventures was solicited by the defendants or their agents through telephone calls and correspondence between Canada and Wichita, Kansas. In addition, meetings between Farha and defendant Martin, concerning the joint ventures, are said to have occurred in Toronto, Chicago, and Wichita. Attached to the affidavit are copies of correspondence between the parties relating to these and other communications.

A culling of these documents reveals three categories of correspondence relevant to our inquiry. First, Farha received frequent correspondence from a Toronto law firm of Shiff, Gross, including one of the contracts for signature. The exact nature of this firm's relationship with defendants is not clear, however it is apparent that the firm handled various matters pertaining to the joint ventures and on occasion acted as intermediary between the parties.[7] A second category of documents involves numerous communications from defendants to plaintiff providing ongoing status reports on the three joint ventures. In some instances, the reports reflected the substance of presentations by defendants to investors at periodic meetings held in the offices of Shiff, Gross. Finally, several communica-

tions involve requests by defendants for further contributions to the joint ventures to cover expenses and satisfy the periodic mortgage obligations on the development properties.[8]

For the most part, the nature of these communications is confirmed in the affidavit, and attached exhibits, of defendant Ross Martin. Martin states that any representations which may have been made to induce plaintiff to enter into the joint venture agreements, and make initial investments, were made during meetings in Ontario. He states that he was first introduced to Farha by Leona Chitel, who the court understands to be a Canadian investment broker. Only after all agreements were finalized in Ontario did he communicate with Farha in Kansas. These communications, involving letters and phone calls are said to have been made for the purpose of keeping plaintiff informed as to the progress of the joint venture projects, and advising Farha of necessary contributions to meet periodic mortgage obligations and other expenses. A schedule of these communications was compiled by Martin and is attached to the affidavit. Ross Martin's Affidavit, Dk. # 8, Exhibit D. The schedule lists 44 telephone calls spanning a period from late 1975 through early 1980, as well as 8 letters sent during the years 1977–79, and two memoranda sent during 1979.

Defendants' argument that assertion of personal jurisdiction would contravene the due process limitation on extraterritorial service of process rests on the characterization of the agreements as involving a foreign transaction with only incidental con-

---

7. For instance, in a letter dated April 17, 1974 from Farha to Morton Gross, a member of the firm, Farha enclosed $5,000 for downpayment on a 10% interest in the Hampton Courts project. By correspondence dated May 21, 1974, a report on another joint venture, the 800 Development Group, was sent to Farha in Wichita by Sheldon Parker, another firm member. Accompanying correspondence dated June 11, 1974, was a "final" copy of the Hampton Courts agreement mailed by Parker to Farha in Wichita.

8. Copies of communications requesting contributions include: a letter of October 11, 1974

from Herb Lewis of Genesis Marketing to Farha requesting $4,212 for the Cobourg venture, a letter of July 7, 1975 from Lewis to Farha requesting $10,000 for the Hampton Courts venture, a letter of January 28, 1976 from D.R. Laird of Genesis Marketing requesting $4,092 for the Cobourg venture, a letter of April 22, 1977 from Martin to Farha requesting $4,500 for mortgage payment and expenses in the Cobourg venture, and a letter of October 15, 1979 from Martin to Farha in Wichita requesting $3,000 to cover an overdue mortgage obligation in the Hampton Courts venture.

nection to this forum. Defendants argue that all solicitation and negotiation of the contracts was confined to Canada, and that later events in Kansas consisted of either minor contacts by defendants or the unilateral activity of plaintiff. This position, however, fails to consider the specific nature of the alleged forum contacts in terms of the coverage of the fraud provisions of Rule 10b–5 and plaintiff's claims.

In addition to nondisclosures and misrepresentations in the sale of securities, Rule 10b–5 prohibits persons from employing a "device, scheme or artifice to defraud" or from engaging in "any act, practice or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b–5 (1982). Plaintiff alleges in its complaint that from 1974, and continuing thereafter, it purchased, in excess of $150,000, an interest in the three joint ventures. Count III of the complaint, premised on Rule 10b–5, alleges a fraudulent scheme and course of business. The specific jurisdictional facts supporting these allegations are set forth in Farha's affidavit and accompanying exhibits. It is apparent from these exhibits that defendants' continuing activities, soliciting additional contributions and reporting on joint venture developments, represent more than peripheral, incidental events in the alleged scheme.

Defendants further contend that since none of the joint venture contracts explicitly provided for performance in Kansas, any local activity by plaintiff was unilaterally undertaken and could not be attributable to defendants as contact with the forum. Relying on the Seventh Circuit decision of *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir.1979), *cert. denied* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), defendants argue that merely contracting with a Kansas citizen does not confer personal jurisdiction where the contracts do not require anyone to do anything in Kansas. Furthermore, defendants rely on *Lakeside Bridge* for the proposition that communications by mail or telephone between a buyer and seller are alone insufficient to support personal jurisdiction.

Whether the contracts specifically require performance, or other activity, in Kansas is not dispositive of the purposefully availing requirement. It is sufficient if an act or conduct has reasonably foreseeable consequences in the forum state. *Pedi Bares, Inc. v. P & C Food Markets, Inc.*, 567 F.2d 933, 937 (10th Cir.1977). See also, *Continental American Corp. v. Camera Controls Corp.*, 692 F.2d 1309 (10th Cir.1982); *Mississippi Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir.1982); *Leaso Data Processing Corp. v. Maxwell, supra*, at 1340. Cf. *Anderson v. Shiflett*, 435 F.2d 1036 (10th Cir.1971) (court found only unilateral forum activity of plaintiff in case involving personal services contract). The purposefully availing standard is but one means to determine the fairness of asserting jurisdiction. The standard interprets due process to require, at a minimum, "that a person is not asked to bear a special burden (such as defending in a foreign forum) unless he has done something in a purposeful manner or with such knowledge as to make his deeds the equivalent of purposeful action." *In-flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir.1972).

Here, forum activity was a foreseeable consequence of the agreements, which contemplated future advances by plaintiff, as well as the soliciting and reporting activity of defendants over a course of several years. Moreover, communications with plaintiff in Kansas were part of a continuous business relationship, created by the joint venture agreements, from which defendants derived considerable economic benefit. Forming an integral part of an alleged scheme, the mail and telephone contacts are themselves a relevant consideration in assessing the nature and extent of defendant's conduct within this country and involvement with the forum. See, *e.g.*, *Continental Grain, Etc. v. Pacific Oil Seeds, Inc.*, 592 F.2d 409 (8th Cir.1979); *Travis v. Anthes Imperial Ltd.*, 473 F.2d 515 (8th Cir.1973); *Securities and Exchange Commission v. Myers*, 285 F.Supp. 743 (D.Md. 1968).

The court has also given due consideration to other factors which deserve weight in determining the reasonableness of the exercise of jurisdiction, particularly the conveniences of the parties, the forum's interest in the litigation, and basic equities. *Pedi Bares,* 567 F.2d at 937. While mindful of the burdens to a party of litigating in a distant forum which is the situs of some but by no means all of the activity giving rise to a lawsuit, the court believes this factor is not decisive where a nonresident defendant engages in deliberate conduct which has a substantial and foreseeable effect on a resident plaintiff, and where the activity is subject to special regulation. *Hanson v. Denckla,* 357 U.S. at 252, 78 S.Ct. at 1239. See also, *Ferraioli v. Cantor, supra* at 847–48; *Securities and Exchange Commission v. VTR, Inc.,* 39 F.R.D. 19 (S.D.N.Y.1966). Relative inconveniences would confront either party depending upon where litigation proceeds.[9] Considering all of the factors as applied to this case, the court finds the assertion of personal jurisdiction equitable and consistent with due process principles.

Having determined that extraterritorial service pursuant to the Federal Securities Acts is constitutionally permissible, the court may also assert jurisdiction over defendants as to plaintiff's state law claims. Persuasive recent authority supports the position that extraterritorial service pursuant to provisions of the Securities Acts confers *in personam* jurisdiction as to related pendent claims. See, *e.g., International Controls Corp. v. Vesco,* 593 F.2d 166, 175 n. 5 (2d Cir.) *cert. denied* 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979); *Oetiker v. Jurid Werke, G.m.b.H.,* 181 U.S.App. D.C. 124, 556 F.2d 1 (1977); *Robinson v. Penn Central Co.,* 484 F.2d 553 (3rd Cir. 1973); *Travis v. Anthes Imperial Ltd., supra; Warren v. Bokum Resources Corp.,* 433 F.Supp. 1360 (D.N.M.1977); *Bertozzi v. King Louie Int., Inc.,* 420 F.Supp. 1166 (D.R.I.1976). *See also,* 4 Wright and Miller,

Federal Practice and Procedure, § 1125, at 527–529 (1969). Where defendant is already properly before the court as to the federal claim, it is necessary only that certain basic principles of pendent subject matter jurisdiction be observed. *Robinson v. Penn Central Co., supra,* at 555–56. The pendent claim should arise out of the same core of operative facts, and the court should exercise discretion in entertaining such claims based on considerations of judicial economy, convenience and fairness to litigants. See, *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Here, all of these considerations favor assertion of jurisdiction over defendants as to the pendent claims.

## FORUM NON CONVENIENS

Next, we consider defendants' alternative ground for dismissal under the theory of *forum non conveniens.* The remedy of dismissal is still available under this doctrine in situations where 28 U.S.C. § 1404(a) is inapplicable, such as where the alternative forum is a foreign or state court. Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3828, at 176–177 (1976). However, a court should decline jurisdiction under the doctrine only in exceptional cases. See *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 504, 67 S.Ct. at 841. Plaintiff's choice of forum should not be disturbed unless it is demonstrated that the forum is so completely inappropriate and inconvenient as to justify dismissal. *Grimandi v. Beech Aircraft Corp.,* 512 F.Supp. 764, 777 (D.Kan.1981). Moreover, where plaintiff is a United States citizen the court may properly require a showing that material injustice would follow if it retained jurisdiction of the matter. *Burt v. Isthmus Development Co.,* 218 F.2d 353, 357 (5th Cir.), *cert. denied* 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955).

---

9. The relative burden of resolving this dispute shifts to plaintiff in view of the court's decision to stay proceedings pending arbitration in Canada. This result, however, has not influenced the court's determination that assertion of jurisdiction is constitutionally appropriate. The inconveniences defendant asserts, while relatively greater than plaintiff's, are not so onerous as to justify dismissal of this action.

Defendant argues that a weighing of the factors set forth in *Gulf Oil, supra,* reveals this forum to be completely inappropriate and justifies dismissal. While the court believes defendants have not demonstrated that dismissal is warranted,[10] a threshold obstacle cautions against application of the test of *Gulf Oil.* The doctrine has been held inapplicable where inconsistent with federal legislative intent to confer upon a plaintiff broad power over choice of forum. See *United States v. National City Lines, Inc.,* 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584, rehearing denied, 334 U.S. 862, 68 S.Ct. 1526, 92 L.Ed. 1781 (1948) (Clayton Act). See also *Gulf Oil Corp. v. Gilbert, supra* 330 U.S. at 505–506, 67 S.Ct. at 841–42. Where the purposes of legislation, together with special venue provisions, indicate such intent the court should not override the legislative purpose by resort to its discretionary powers under *forum non conveniens. Id.* See also *Baltimore and O.R. Co. v. Kepner,* 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28 (1941) (Federal Employers Liability Act). Accordingly, prior to enactment of 28 U.S.C. § 1404(a), the doctrine was held inapplicable in an action brought under the ·Securities Act of 1933. *Securities and Exchange Commission v. Wimer,* 75 F.Supp. 955 (W.D. Pa.1948).

■ Enactment of § 1404(a) has not altered this view. Though the doctrine, as modified under the statute to permit transfer between federal courts, applies to all civil actions including those subject to special venue statutes, 1 *Moore's Federal Practice,* ¶ 0.145[4.–1] (1974), the distinguishing factor is the less severe statutory remedy. See *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). Where transfer is not possible, it remains the rule that judicial discretion to dismiss an action under the common law doctrine should not be exercised where it would defeat a legislative purpose of vesting plaintiff with liberal powers as to choice of forum. See *General Electric Credit Corp. v. James Talcott, Inc.,* 271 F.Supp. 699 (S.D.N. Y.1966) (recognizing holding of *Securities and Exchange Commission v. Wymer, supra,* that the special venue provisions of the Securities laws are not limited by the doctrine).

■ Defendants refer the court to plaintiff's complaint which alleges venue under 28 U.S.C. § 1391(d). Defendants argue that the doctrine is applicable since the requirement that venue be determined by a general venue statute is met by the complaint's reference to § 1391(d). This argument is meritless. This statutory provision is inappropriate in view of the fact service of process could not be obtained in this district. Moreover, reliance on a general venue statute is unnecessary where plaintiff states claims based on federal laws which contain special venue provisions. Defendants' motion to dismiss pursuant to the doctrine of *forum non conveniens* is denied.

## STAY TO ARBITRATE

Defendants assert that, in the event the court declines to dismiss this action, they are entitled to a stay of further proceedings pending arbitration of all claims in Ontario, Canada. Defendants seek a stay pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.,* and request, in the alternative, that the court exercise its inherent power to stay proceedings pending arbitration under the Ontario Arbitration Act as provided in the agreements. Thus, having determined that plaintiff's claims are not subject to dismissal under theories of lack of personal jurisdiction and *forum non conveniens,* the court must now consider whether plaintiff

---

**10.** Defendants argue that their potential witnesses and relevant business documents are in Canada, and that none of these witnesses, including other investors, are subject to compulsory process. It is also argued that defendants' lack of physical presence in the United States would make a judgment of this court difficult to enforce. Defendants also contend that any application of Ontario law as envisioned by the contracts would involve expensive expert testimony and should best be left to Ontario courts. On the other hand, plaintiff argues that certain of its witnesses are present within the forum, and that correspondence giving rise to its claims is in its possession in Kansas. Plaintiff also argues that it has not been demonstrated that its claims can or would be heard in Canadian courts.

may contractually waive its right to application of federal securities laws in a United States court.

The three joint venture agreements each contain identical arbitration clauses which state in part:

> Except as herein otherwise provided, should any dispute, difference or question arise among any of the parties hereto touching this agreement or any part thereof, or the business or assets of the Joint Venture, meaning or effect of these presents or anything herein contained then such dispute shall be determined by arbitration.[11]

Each of the clauses also set forth the same method of selecting arbitrators.[12]

The court believes the Federal Arbitration Act is applicable to this proceeding, and we therefore do not reach the question of the propriety of granting a stay under the court's inherent powers.[13] Section 3 of the Act provides for a stay of proceedings:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The court must be satisfied the issue is properly referable to arbitration under the agreements of the parties. Before doing so, the court must be satisfied that the arbitration clause is one that is valid and enforceable under the Act.

As to this initial determination, plaintiff raises two separate, though interrelated, arguments. First, plaintiff contends the clauses are not enforceable under the Act since the joint venture agreements do not evidence a "transaction involving commerce." Second, under the rationale of *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) plaintiff raises the question whether the arbitration clauses are void as to the securities claims on the basis of non-waiver provisions of the Securities Acts. See 15 U.S.C. § 77n, 15 U.S.C. § 78cc(a).

■ Section 2 of the Arbitration Act provides that a written provision "in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable. . . ." 9 U.S.C. § 2. The Act defines

---

11. Ross Martin's affidavit, Dk. # 8, Exhibit A at § 11.01, Exhibit B at § 11.01, Exhibit C at § 12.01.

12. "Any arbitration hereunder shall be conducted by a single arbitrator agreed upon by the parties to the dispute. If the parties shall be unable or unwilling to agree upon an arbitrator within a period of forty (40) days from the receipt of the Notice, as aforesaid, then each of the parties shall appoint an arbitrator and the third arbitrator shall be appointed by the first named arbitrators in writing before they enter upon the business of the dispute; if either of the parties to the dispute shall have appointed an arbitrator, then the first named arbitrator shall select the second arbitrator. The two arbitrators appointed as aforesaid shall appoint a third arbitrator. In the event that the two aforementioned arbitrators shall be unable to agree upon a third arbitrator within ten (10) days, then the third arbitrator shall be appointed by a Judge of the Judicial District of York upon application thereto. The award and determination which shall be made by the said arbitrators, or the majority of them shall be final and binding upon the parties. The provisions of this paragraph shall be deemed to be a submission to arbitration within the provisions of the Arbitration Act and any statutory modification or reenactment thereof, provided that any limitation in the remuneration of the arbitrators imposed by such legislation shall not be applicable."

13. Defendants have submitted the affidavit of Eric K. Slone, a Barrister and Soliciter licensed in Ontario, describing provisions of the Ontario Arbitration Act. Attached to this affidavit are three exhibits. Exhibit A sets forth the text of the Act. Exhibits B and C are two Ontario Court opinions interpreting the Act, *Lamont v. Wright* (1943) O.W.N. 11 and *Royal Trust Company v. Milligan* (1905) 10 O.L.R. 456.

"commerce" to include "commerce among the several States or with foreign nations." 9 U.S.C. § 1. In support of its position that the joint venture agreements do not involve commerce, in this case international commerce, plaintiff refers the court to a line of cases, including the decision of *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), which refused to apply the Arbitration Act in actions based on diversity jurisdiction where the contracts did not involve requisite interstate or international commerce.

The court does not find this authority persuasive to the issue presented here. This court has jurisdiction by virtue of claims based on federal law where the commerce requirement is further satisfied by the nature of the contracts. Certainly the use of plaintiff's money to develop and manage Canadian real estate is a transaction involving commerce for purposes of application of the Arbitration Act. Cf. *Pawgan v. Silverstein*, 265 F.Supp. 898 (S.D.N.Y.1967) (court declined to apply Act to intrastate securities transaction involving sale of partnership interests); *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.Supp. 359 (S.D.N.Y.1966) (broker's purchase of sugar futures on the London commodity exchange on behalf of a foreign national did not satisfy § 2 of the Act where the only connection with the foreign commerce of this country was the fact that the broker was a United States corporation).

Plaintiff further argues that the arbitration clauses are void as to the securities claims under the holding of *Wilko v. Swan, supra*. In that case, a purchaser of securities brought an action under the Securities Act of 1933 against a broker, alleging that false representations were made in inducing the sale. The parties' margin agreement contained an agreement to arbitrate all future disputes arising from their transactions. The Supreme Court held that the arbitration agreement was void under § 14 of the Securities Act which in part provides that any stipulation waiving compliance with the provisions of the Securities Act is void. 15 U.S.C. § 77n.

The Court found that the agreement to arbitrate was a stipulation, and that such an agreement deprived the purchaser of an important provision of Securities Act, the right under 15 U.S.C. § 77v(a) to select the judicial forum. The right to a judicial forum was deemed necessary to effectuate the purposes of the Securities Act. The rationale of *Wilko* concerning § 14 of 1933 Act has been generally recognized to apply to the similar nonwaiver provisions of § 29(a) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78cc(a). See *Merrill, Lynch, Pierce, Fenner & Smith v. Moore*, 590 F.2d 823 (10th Cir.1978). See also cases compiled in 26 A.L.R.Fed. 495 at § 3.

*Wilko* would clearly be controlling to the case at bar were it not for the Court's subsequent decision of *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), in which the Court held that the provisions of the Arbitration Act applied to arbitration clauses in international agreements involving securities transactions. The plaintiff there was an American corporation which had purchased from defendant, a German citizen, three foreign businesses as well as all trademark rights held by these businesses. The contract, which contained a provision for arbitration in Paris, France, was negotiated, signed, and executed in several different countries. Some of the negotiations occurred in the United States. Plaintiff later brought an action under the antifraud provisions of the Securities Exchange Act of 1934, alleging misrepresentations concerning the status of the trademark rights.

The Court found that these facts, particularly the contractual subject matter, indicated a truly international agreement and distinguished the transaction from the type of agreement examined in *Wilko*. The policies favoring arbitration under the Arbitration Act prevailed when viewed in the context of international commerce and trade. Contractual provisions which select in advance the forum and law to be applied represented "an almost indispensable pre-

condition to achievement of the orderliness and predictability essential to any international business transaction." 417 U.S. at 516, 94 S.Ct. at 2455.[14] Such provisions avoided the uncertainty which accompanies a contract touching two or more countries. *Id.* In refusing to apply the exception carved out by *Wilko* to international securities transaction, the Court reasoned:

> "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute. The invalidation of such an agreement in the case before us would not only allow the respondent to repudiate its solemn promise but would, as well, reflect a 'parochial concept that all disputes must be resolved under our laws and in our courts.... We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.'" (footnote omitted) (quoting *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 9, 92 S.Ct. 1907, 1912, 32 L.Ed.2d 513 (1972)).

417 U.S. at 519, 94 S.Ct. at 2457.[15]

Plaintiff argues that since the joint venture agreements do not involve substantial international commerce *Scherk* is not applicable to this case. As already indicated, the agreements satisfy the commerce requirement of § 2 of the Arbitration Act. Plaintiff's argument, however, raises the additional question whether the agreements are truly international so as to bring the arbitration clauses within the protective ambit of *Scherk.* This question cannot be answered by simple reference to the size of a commercial transaction or the amount of money involved. The Court in *Scherk* recognized that any determination of whether a commercial securities transaction is of a truly international character would have to consider the extent of foreign contacts involved in the transaction. *Id.* 417 U.S. at 517, n. 11, 94 S.Ct. at 2456, n. 11. The Court acknowledged that situations may arise where a transaction involves contacts predominately with this country, in which case the holding in *Wilko* would apply.

The instant case could not be characterized as one involving an agreement having only insignificant or attenuated contacts with a foreign country. Plaintiff is an American corporation with its principal place of business in this country, whereas defendants are citizens of Canada. Negotiations preceding execution of the joint venture agreements appear to have taken place primarily in Ontario. The subject matter of the joint venture agreements concerns substantial investments by plaintiff in a Canadian operation to develop and sell Canadian property. The court believes the agreements involve an international commercial transaction within the purview of *Scherk,* and therefore the arbitration clauses are valid and enforceable under the Arbitration Act.

Once it is determined that the Act applies to an agreement to arbitrate, the determination whether all of plaintiff's claims are referable to arbitration is a matter governed by application of federal law. *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 409 (2nd Cir.1959), *cert. dismissed,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). The court is satisfied that this dispute is properly referable to arbitration pursuant to the stay provision of 9 U.S.C. § 3. In reaching this conclusion

---

**14.** The joint venture agreements each specify that the contracts are governed in accordance with the laws of Ontario. See Ross Martin's affidavit, DK. # 8, Exhibit A at § 11.08, Exhibit B at § 11.08, Exhibit C at § 12.08.

**15.** The Court noted that its conclusion that the Arbitration Act applied to international commercial securities transactions was confirmed by enactment of Chapter 2 of the United States Arbitration Act, 9 U.S.C. §§ 201 *et seq.,* 417 U.S. at 520, n. 15, 94 S.Ct. at 2457, n. 15. Chapter 2 implements the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, a treaty which the United States ratified in 1970.

the court is mindful of the federal policy favoring arbitration of disputes. *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209, 1212 (2nd Cir.), *cert. denied* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972). In determining whether the language of the parties' agreement to arbitrate covers the controversy at hand, this policy requires that we "construe liberally arbitration clauses, to find that they cover disputes reasonably contemplated by this language, and to resolve doubts in favor of arbitration...." *Metro Industrial Painting Corp. v. Terminal Construction Co.,* 287 F.2d 382, 385 (2nd Cir.), *cert. denied* 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961). See also *Hart v. Orion Insurance Co.,* 453 F.2d 1358 (10th Cir.1971); *Coudert v. Paine Webber Jackson & Curtis,* 543 F.Supp. 122 (D.Conn.1982); *PAS–EBS v. Group Health, Inc.,* 442 F.Supp. 937 (S.D.N.Y.1977). The broad arbitration clauses of the joint venture contracts are not restricted to any particular type of dispute or controversy. Nor are defendants in default in pursuing arbitration. 9 U.S.C. § 3. Therefore, defendants motion for stay of proceedings will be granted as required by § 3 of the Act.

IT IS THEREFORE ORDERED, that defendants' motion to dismiss plaintiff's complaint is denied

IT IS FURTHER ORDERED that defendants' motion to stay this action pending arbitration is granted, and that all further proceedings shall be stayed pending arbitration under the parties' agreements and pursuant to § 3 of the Federal Arbitration Act.