835 F.2d 1341
 18 Bankr.Ct.Dec. 1432, Bankr. L. Rep. P 72,191
 In re CHASE & SANBORN CORP., f/k/a General Coffee Corp., Debtor.
Paul C. NORDBERG, Plaintiff-Appellee,
v.
GRANFINANCIERA, S.A., a Colombian corporation, and Medex,
Ltda, a Latin American corporation, Defendants-Appellants.
 No. 86-5738.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 19, 1988.
 
 William D. Matthewman, Ezell, Menendez, Patterson, Claussen & Daniel, Adam H. Lawrence, Lawrence & Daniels, Miami, Fla., for defendants-appellants.
 Gary R. Jones, Miami, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before FAY and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.
 MORGAN, Senior Circuit Judge:
 
 
 1
 This is an appeal by the Colombian defendants Granfinanciera, S.A. and Medex, Ltda. from an adverse bankruptcy decision by the district court that three money transfers from debtor Chase & Sanborn Corporation, f/k/a General Coffee Corporation ("C & S"), to defendants were fraudulent and, therefore, could be avoided by debtor's creditor/trustee, Paul C. Nordberg. We affirm.
 
 I. FACTS
 
 2
 The money transfers involved in this case consisted of: (1) a $1,500,000 wire transfer on October 21, 1982, from C & S's account in the New York Banque Worms to Granfinanciera's bank account at Banco Real in Miami; (2) a cashier's check for $100,000 dated December 15, 1982, purchased by C & S from Royal Trust Bank in Miami and deposited in Medex's account at Banco Real in Miami; and (3) another cashier's check for $80,000 dated December 16, 1982, purchased by C & S from Royal Trust Bank in Miami and deposited in Medex's account at Banco Real in Miami.
 
 
 3
 C & S filed a petition for bankruptcy on May 18, 1983. The trustee subsequently sued Granfinanciera and Medex alleging that at the time of the transfers C & S was insolvent[1] and that C & S received no consideration or less than a reasonably equivalent value in exchange for the transfers. Therefore, the trustee alleged, the transfers were fraudulent conveyances which may be avoided pursuant to 11 U.S.C. Sec. 548(a)(2)[2] and which may be recovered from Granfinanciera and Medex for the benefit of the estate of C & S pursuant to 11 U.S.C. Sec. 550(a).[3] Both defendants were properly served in Bogota, Colombia on December 26, 1985. On January 10, 1986, the Government of Colombia nationalized Granfinanciera. Granfinanciera and Medex filed motions inter alia to dismiss this suit for lack of personal and subject matter jurisdiction. The bankruptcy judge denied the motions and commenced trial on February 20, 1986. Following several interruptions in the trial, the bankruptcy court entered judgment for the trustee against Granfinanciera and Medex. On appeal, the district court affirmed the judgment of the bankruptcy court.
 
 
 4
 Defendants appeal alleging neither court properly exercised in personam jurisdiction over defendants, defendant Granfinanciera is an instrumentality of the Colombian government and thus is immune from United States jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. Secs. 1602-10 ("FSIA"), and the trustee's equitable cause of action which sought only monetary relief remains a legal proceeding to which the seventh amendment right to trial by jury attaches.
 
 II. DISCUSSION
 A. PERSONAL JURISDICTION
 
 5
 Service of process is the physical means by which personal jurisdiction is obtained over a party. Chapter 11 employs Rules 4(a), (b), (d), (e), and (g)-(i) of the Federal Rules of Civil Procedure for service in adversary proceedings.[4] Rule 4(e) pertains to service upon a party not an inhabitant of or found within a state. Granfinanciera and Medex mistakenly rely on the second sentence of Rule 4(e)[5] to assert that the court must use Florida's long-arm statute to obtain personal jurisdiction over them. This premise ignores the first sentence of Rule 4(e) which states that where a federal statute provides for service of process the court should use that statute.[6] Federal Bankruptcy Rule 7004(d) provides for nationwide service of process and thus is the statutory basis for personal jurisdiction in this case, not Florida's long-arm statute. See Wichita Federal Savings & Loan Ass'n v. Landmark Group, 657 F.Supp. 1182, 1194 (D.Kan.1987); C. Wright & A. Miller, Federal Practice and Procedure, Secs. 1118, 1125 (1987). Cf. Max Daetwyler Corp. v. Meyer, 762 F.2d 290, 295 (3d Cir.), cert. denied, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed. 336 (1985) (absent a federal statute authorizing nationwide service of process, federal court must turn to state long-arm statutes); Colon v. Gulf Trading Co., 609 F.Supp. 1469, 1474-75 (D.P.R. 1985) (court must use Puerto Rican long-arm statute because admiralty statutes do not provide for nationwide service of process).
 
 
 6
 Exercise of this Congressional grant of authority is not boundless, however. The due process clause of the fifth amendment[7] constrains a federal court's power to acquire personal jurisdiction via nationwide service of process.[8] Pioneer Properties, Inc. v. Martin, 557 F.Supp. 1354, 1358 (D.Kan.1983); In re Fotochrome, Inc., 377 F. Supp. 26, 29 (E.D.N.Y.1974) (construing former bankruptcy statute), aff'd, 517 F.2d 512 (2d Cir.1975); In re Deak, 63 B.R. 422, 428 (Bankr.S.D.N.Y.1986); In re A & W Publishers, Inc., 39 B.R. 666, 667 (Bankr.S.D.N.Y.1984).
 
 
 7
 We look to International Shoe v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny for guidance in determining whether due process is satisfied here.[9] See Lapeyrouse v. Texaco, Inc., 693 F.2d 581, 586 (5th Cir.1982); Bamford v. Hobbs, 569 F.Supp. 160, 166 (S.D.Tex.1983). The Court, in International Shoe, found that:
 
 
 8
 [D]ue process requires ... that in order to subject a defendant to judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."
 
 
 9
 326 U.S. at 316, 66 S.Ct. at 158 (citing Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Inquiry into a defendant's contacts must not be mechanical. Id. 326 U.S. at 319, 66 S.Ct. at 159. Instead, a court must weigh the facts of each case to determine whether the requisite "affiliating circumstances" are present. Kulko v. California Superior Court, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978); Hanson v. Dencla, 357 U.S. 235, 246, 78 S.Ct. 1228, 1235-36, 2 L.Ed.2d 1283 (1958). In a minimum contacts inquiry where a defendant is an alien, the emphasis is on the fairness and reasonableness of requiring the defendant to appear in the United States. In re Deak, 63 B.R. at 430. See Max Daetwyler Corp., 762 F.2d at 294. Factors to be considered include (a) the extent of the defendant's purposeful interjection into the forum state; (b) the burden on the defendant of defending in the forum; (c) the extent of conflict with the sovereignty of defendant's state; (d) the forum state's interest in adjudicating the dispute; (e) the most efficient judicial resolution of the controversy; (f) the importance of the forum to plaintiff's interest in convenient and effective relief; and (g) the existence of an alternative forum.[10] In re Deak, 63 B.R. at 430, citing Insurance Co. of North America v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir.1981).
 
 
 10
 1. Extent of defendant's purposeful interjection into Florida
 
 
 11
 The debtor, C & S, ordered the transfers out of which this cause of action arose from its Miami office. The transfers, in United States currency, were made from the debtor's New York and Miami bank accounts. Under 11 U.S.C. Sec. 548(a)(2) a fraudulent conveyance is established when a non-creditor of an insolvent debtor receives a transfer without returning value or consideration for the transfer. See Mayo v. Pioneer Bank and Trust Co., 270 F.2d 823, 829 (5th Cir.1959), cert. denied, 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960);[11] In re Health Gourmet, Inc., 29 B.R. 673, 677 (Bankr.D.Mass.1983). The fraudulent conduct and its injurious effect occurred in Miami.
 
 
 12
 Moreover, the record supports the finding of the district court that the defendants conducted numerous international business transactions utilizing their bank accounts in Miami, as well as New York, Chicago, and San Francisco.
 
 
 13
 2. Burden on defendants of defending transfers in Florida
 
 
 14
 Modern means of communication and transportation have lessened the burden of defending a lawsuit in a distant forum. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292-93, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); Hanson, 357 U.S. at 251, 78 S.Ct. at 1238, McGee v. International Life Insurance Co., 355 U.S. 220, 222-23, 78 S.Ct. 199, 200, 2 L.Ed.2d 223 (1957). There appear to be relatively few impediments to defending this particular lawsuit. Transportation between Bogota and Miami is readily available. Compare Insurance Co. of North America, 649 F.2d at 1271 (no direct transportation to or from defendant shipyard to forum). Granfinanciera and Medex are good-sized banking concerns which, presumably, have access to at least telephone lines, if not the more sophisticated electronic telecommunication equipment available today.
 
 
 15
 3. Extent of conflict with Colombia's sovereignty
 
 
 16
 The doctrine of comity between sovereign nations dictates that we examine possible conflicts with Colombia's sovereignty. As discussed infra, Granfinanciera is presently an instrumentality of the Colombian government. This fact would, in most instances, bear negatively on the reasonableness of personal jurisdiction. See Insurance Co. of North America, 649 F.2d at 1272. These transfers occurred and this case was filed, however, before Granfinanciera's nationalization. Thus, as discussed infra, any benefits of sovereignty do not attach to this cause of action.
 
 
 17
 This cause of action arises under United States Bankruptcy laws. Except for the decrees pertaining to Granfinanciera's nationalization, no Colombian law or other interest of that government is involved in the present controversy.
 
 
 18
 4. Florida's interest in adjudicating the dispute; the most efficient judicial resolution of the controversy
 
 
 19
 The United States Bankruptcy Court for the Southern District of Florida has a substantial interest in adjudicating the legitimacy of the debtor's transfers to Granfinanciera and Medex in order that all facets of the C & S reorganization may be consistently decided and the trustee may recover all assets which belong in the debtor's estate. The debtor is a Florida corporation. It filed for reorganization in the Southern District of Florida. This case is one of more than seventy actions commenced by the debtor's trustee against various entities to recover fraudulent or preferential transfers for the benefit of the C & S estate. Many of these actions, including the instant case, were filed in the Southern District of Florida. Nearly all of the activities involved in this particular case occurred in Florida. Much of the evidence needed exists in Miami, in the debtor's records and the records of the banks in which debtor and defendants had their respective accounts. The federal courts in the Southern District of Florida are familiar with the litigation aspects of the C & S reorganization and so would provide the most efficient judicial resolution to adversarial proceedings arising out of debtor's pre-bankruptcy transactions.
 
 
 20
 5. Convenient and effective relief for C & S; existence of an alternative forum
 
 
 21
 This cause of action arose under United States bankruptcy law. Only a United States court would have subject matter jurisdiction. As discussed supra, C & S is a Florida corporation and most of the particulars of this case occurred in the Southern District of Florida. Thus, the Southern District of Florida is the most suitable forum. Granfinanciera and Medex are no more inconvenienced by a trip to one state than another. See Centronics Data Computer Corp. v. Mannesmann, A.G., 432 F.Supp. 659, 663 (D.N.H.1977). Accord DeJames v. Magnificence Carriers, Inc., 491 F.Supp. 1276, 1281 (D.N.J.1980), aff'd, 654 F.2d 280 (3d Cir.1981), cert. denied, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981).
 
 
 22
 In sum, the statutory and constitutional concerns are satisfied; both the bankruptcy and district court properly exercised in personam jurisdiction over Granfinanciera and Medex.
 
 B. FOREIGN SOVEREIGN IMMUNITIES ACT
 
 23
 The United States follows the "restrictive" theory of sovereign immunity. Our courts will only waive jurisdiction if the cause of action arose out of a foreign sovereign's governmental rather than commercial act. See Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). FSIA, which embodies this theory, delineates the circumstances under which an agency or instrumentality of a foreign sovereign may be subject to suit in a court of the United States. Granfinanciera contends that it was nationalized by the Colombian government, is thereby an instrumentality of that government,[12] and is thus immune from the jurisdiction of the courts of the United States.[13]
 
 
 24
 We agree with the district court's finding below. FSIA is inapplicable to the case at bar because the transfers in question and the suit to recover those transfers occurred before Granfinanciera was nationalized. Cf. Braka v. Bancomer, 589 F.Supp. 1465, 1469 (S.D.N.Y.1984), aff'd, 762 F.2d 222 (2d Cir.1985) ("Bancomer was a state instrumentality ... at the time of the lawsuit as well as at the time the act on which this suit is based took place."). Granfinanciera was not an instrumentality of the Colombian government at time of the transactions and thus would not be protected by the provisions of FSIA. Further, Granfinanciera did not prove that the transactions in question were governmental in nature and therefore protected. See H.R. No. 1487, 94th Cong., 2d Sess. 17, reprinted in 1976 U.S.Code Cong. & Admin.News 6604, 6616 (legislative history of FSIA).
 
 C. RIGHT TO A JURY TRIAL
 
 25
 We turn finally to the defendants' demand for a jury trial. This presents two thorny issues; whether a defendant has a right to a jury trial where the bankruptcy trustee seeks to avoid transfers of money by the debtor to the defendants and, if the right does exist, whether a bankruptcy court has authority to conduct a jury trial in a core proceeding?[14]
 
 
 26
 A defendant's right to a jury trial may arise either from the seventh amendment to the United States Constitution or from the statute which authorized the trustee's suit. In re Graham, 747 F.2d 1383, 1387 (11th Cir.1984); Sibley v. Fulton DeKalb Collection Service, 677 F.2d 830, 832-33 (11th Cir.1982). Because it may be quickly disposed of, we shall first discuss the possibility of a statutory right.
 
 
 27
 The cause of action sued upon by the trustee was brought under 11 U.S.C. Sec. 548(a)(2), the "constructive" fraud provision of the Bankruptcy Code. Section 548(a)(2) does not provide for a jury trial. Section 1480 of Title 28 of the 1978 Bankruptcy Reform Act did provide for jury trials, preserving any right to a trial by jury that existed prior to the enactment of the Act. Section 1480 was repealed, however, by the enactment of Sec. 1411 of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). See Committee Note to abrogation of Rule 9015, Proposed Bankruptcy Rules, reprinted in 2 W.H. Drake & A.L. Mullins, Jr., Bankruptcy Practice, Appendix C, AC-178 (1987) (amendments become effective August 1, 1987); In re McLouth Steel Corp., 55 B.R. 357, 362 (E.D.Mich.1985); In re O'Bannon, 49 B.R. 763, 768 and n. 15 (Bankr.M.D.La.1985); King, Jurisdiction and Procedure Under the Bankruptcy Amendments, 38 Vand.L.Rev. 674, 703 (1985). Section 1411 affords jury trials only in personal injury or wrongful death suits. See Committee Notes, supra. This section has prospective effect and does not apply to cases pending on July 10, 1984, the effective date of BAFJA. See Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, Sec. 122(b). The underlying bankruptcy action from which this dispute arose was filed before July 10, 1984, see In re Harbour, 59 B.R. 319, 324-25 (W.D.Va.1986), and the trustee's claim clearly is not for personal injury or wrongful death. There is, therefore, no statutory right to a jury trial in the case at bar.
 
 
 28
 The seventh amendment to the United States Constitution states: "In suits at common law, where the value in controversy exceeds twenty dollars, the right of trial by jury shall be preserved...." This amendment extends the right not only to suits existing in common law at the time the amendment was adopted, but also to any suit which is not of equity or admiralty jurisdiction. Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 446-47, 7 L.Ed. 732 (1830). See also Curtis v. Loether, 415 U.S. 189, 192-93, 94 S.Ct. 1005, 1007-08, 39 L.Ed.2d 260 (1974).
 
 
 29
 The cause of action in the case at bar was to avoid three fraudulent transfers. Jury trials are not required in actions to recover fraudulent conveyances. See In re Graham, 747 F.2d at 1387; In re Newman, 14 B.R. 1014, 1015 (Bankr.S.D.N.Y.1981); In re Hause, 10 B.R. 628, 629 (Bankr.D.Mass.1981); In re Fleming, 8 B.R. 746, 749 (Bankr.N.D.Ga.1980); Towers v. Titus, 5 B.R. 786, 791 (N.D.Cal.1979). See also In re Glen Otis, 13 B.R. 279 (Bankr.N.D.Ga.1981) (jury trial denied in trustee's action to recover a voidable preference). Defendants contend that because the ultimate relief granted was monetary, the trustee's claim was "legal" and, therefore, they have a right to a jury trial. The Supreme Court in Curtis, supra, found that not every award of monetary relief is necessarily "legal" in nature. 415 U.S. at 196, 94 S.Ct. 1009. (Supreme Court, in granting jury trial in action for damages and injunctive relief under Title VII of the Civil Rights Act of 1964, distinguished administrative and bankruptcy proceedings involving complex statutory schemes from "ordinary civil actions"). Cf. In re Wencl, 71 B.R. 879, 883 and n. 2 (Bankr.D.Minn.1987) ("[A] thorough examination of plaintiff's cause of action [is required], rather than focus[ing] solely on nature of relief sought in literal language of prayer for relief." Distinguishing between fraudulently conveyed property and the value of the property or a fraudulently conveyed sum of money is indefensible.). "Monetary relief may flow from an equitable claim without acquiring a legal character." In re Fleming, 8 B.R. at 749-50, quoting Towers v. Titus, 5 B.R. at 794-95. For example, no right to a jury trial exists when backpay is sought in a Title VII action, 42 U.S.C. Sec. 2000e et seq., because it is an integral part of the equitable remedy of reinstatement. Slack v. Havens, 522 F.2d 1091, 1094 (9th Cir.1975).
 
 
 30
 The trustee sought to avoid the fraudulent transfers made by C & S to Granfinanciera and Medex and appealed to the bankruptcy court's equitable discretion to grant "such other relief as is just and proper" in order to satisfy the ends of justice. That the court chose to grant monetary relief did not change the equitable nature of the cause of action.
 
 
 31
 Moreover, bankruptcy itself is equitable in nature and thus bankruptcy proceedings are inherently equitable. See In re Major Tire Co., 64 B.R. 305, 306 (Bankr.N.D.Ga.1986); In re Durbin, Inc., 62 B.R. 139, 145 (S.D.Fla.1986). A cause of action to avoid a fraudulent transfer is a "core proceeding." 28 U.S.C. Sec. 157(b)(2)(H). A core proceeding is a proceeding created by the Bankruptcy Code and is brought in a bankruptcy court, and thus is inherently equitable in nature. See Merrill v. Walter E. Heller & Co., 594 F.2d 1064, 1065 (5th Cir.1979) (no constitutional right to a jury trial in bankruptcy on a dischargeability issue), Baldwin-United Corp. v. Thompson, 48 B.R. 49, 56 (Bankr.S.D.Ohio 1985) (no constitutional right to jury trial in core proceeding); King, Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984, 38 Vand.L.Rev. at 704 (no right to jury trial in core proceeding).
 
 
 32
 This is in accord with Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) where the Supreme Court stated "[t]he Bankruptcy Act, passed pursuant to the power given to Congress by Art. I, Sec. 8, of the Constitution to establish uniform laws on the subject of bankruptcy, converts a creditor's legal claims into an equitable claim...."[15] Id. 382 U.S. at 336-37, 86 S.Ct. at 476. If pursuant to this constitutional power, Congress may convert a creditor's legal right into an equitable claim and displace any seventh amendment right to trial by jury, Congress may likewise treat other core proceedings in bankruptcy such as actions to avoid fraudulent transfers or preferences. See In re Southern Indus. Banking Corp., 66 B.R. 370, 375 (Bankr.E.D.Tenn.1986). "Congress may accommodate the right to a trial by jury to the need for expeditious proceedings." Best Pack Seafood, 45 B.R. 194, 195 (Bankr.D.Me.1984). See also In re Hendon Pools of Michigan, Inc., 57 B.R. 801, 803 (S.D.Mich.1986) (no right to jury trial to avoid preferential or fraudulent transfers, both core proceedings, since equitable jurisdiction of the bankruptcy court is invoked, bringing action within scope of Katchen holding). Accord Acolyte Elec. Corp. v. City of New York, 69 B.R. 155, (Bankr.E.D.N.Y.1986); In re Associated Grocers of Nebraska Cooperatives, Inc., 62 B.R. 439 (D.Neb.1986); In re Harbour, supra; Hauytin v. Grynberg, 52 B.R. 657 (Bankr.D.Col.1985); 1 Collier on Bankruptcy, Par. 3.01(7)(b)(i) (15th ed. 1986). Congress enacted the Bankruptcy Code to provide a prompt resolution of all bankruptcy causes of action in order to expedite the settlement of the debtor's estate. Jury trials would "dismember" the statutory scheme of the Bankruptcy Act. Curtis, 415 U.S. at 195, 94 S.Ct. at 1009.
 
 
 33
 Accordingly, the defendants' demands for a jury trial must be denied. We, therefore, need not determine whether a bankruptcy court has authority to conduct a jury trial.[16]
 
 III. CONCLUSION
 
 34
 Both the bankruptcy and district courts had personal jurisdiction over defendants Granfinanciera and Medex. FSIA is inapplicable in the case at bar. Neither defendant has a right to a jury trial. AFFIRMED.
 
 
 
 [1]
 11 U.S.C. Sec. 101(31) defines "insolvent" as:
 (A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of--
 (i) property transferred, concealed, or removed with intent to hinder, delay or defraud such entity's creditors; and
 (ii) property that may be exempted from property of the estate under section 522 of this title; ...
 
 
 [2]
 Section 548(a)(2) provides in pertinent part:
 The trustee may avoid any transfer of an interest of the debtor in property ... that was made or incurred or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily ... (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (B)(i) was insolvent on the date that such transfer was made ...
 
 
 [3]
 Section 550(a) states:
 Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 548 ..., the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from
 (1) the initial transferee of such transfer or the entity for whose such transfer was made; or
 (2) any immediate or mediate transferee of such initial transferee.
 
 
 [4]
 Bankr.Rule 7004, 11 U.S.C.A. (West 1984)
 
 
 [5]
 The second sentence of Rule 4(e) reads in pertinent part:
 Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state ... service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.
 Fed.R.Civ.P. 4(e), 28 U.S.C.A. (West 1960 & Supp.1986).
 
 
 [6]
 See id
 
 
 [7]
 The fifth amendment provides that "no person shall be ... deprived of life, liberty, or property without due process of law."
 
 
 [8]
 Federal courts agree that a fifth amendment due process inquiry is necessary where, as in the case at bar, the defendant is an alien, i.e., neither a United States citizen or national. We note, without deciding the issue, that there is a lack of consensus among the courts as to whether a due process analysis is necessary where the defendant is a domestic corporation served via nationwide service of process. Several courts insist upon a full-blown minimum contacts analysis. See, e.g., Wichita Federal Savings & Loan Ass'n, 657 F.Supp. at 1194-95 (issue of personal jurisdiction requires a fifth amendment due process "minimum contacts" analysis, considering burden of litigation on defendant, defendant's reasonable expectations and foreseeability of litigation in forum state, plaintiff's interest in convenient and effective relief, federal judicial system's interest in efficiently resolving controversies, and forum state's interest in having a court within forum state adjudicate the dispute); Bamford v. Hobbs, 569 F.Supp. 160, 166 (S.D.Tex.1983) (listing substantially same factors as Wichita Federal, supra )
 Other courts hold that the defendant's mere presence within the United States satisfies whatever due process concerns exist. See, e.g., Mariash v. Morrill, 496 F.2d 1138, 1143 (2d Cir.1974) (where defendants reside within United States "minimal contacts" are present); Clement v. Pehar, 575 F.Supp. 436, 438-39 (N.D.Ga.1983) (where nationwide service of process is authorized, due process only requires defendant have minimum contacts with United States; defendants were U.S. citizens and properly served within U.S., therefore, district court "may constitutionally exercise jurisdiction over them.").
 While still other courts determine that a due process analysis is completely unnecessary where service is nationwide and is properly performed outside the forum district yet within the United States. See e.g., Pioneer Properties, Inc., 557 F.Supp. at 1358 and n. 6 (no fifth amendment limitation on jurisdiction if nationwide service is properly perfected outside forum district but within United States); In re Prospect Hill Resources, Inc., 69 B.R. 79, 79-80 (Bankr.N.D.Ga.1986) (no due process "minimal contacts" requirement necessary to justify exercise of jurisdiction where defendant was Illinois resident, case involved federal question litigation, and Congress provided for nationwide service of process); In re Whippany Paper Board Co., 15 B.R. 312, 315 (Bankr.D.N.J.1981) ("minimum contacts test has no particular relevance" in bankruptcy suit between domestic corporations because federal statute confers jurisdiction and provides for nationwide service).
 
 
 [9]
 International Shoe and its progeny were decided under fourteenth amendment due process constraints on state courts using state long-arm statutes to acquire personal jurisdiction over foreign as opposed to alien defendants. The due process concerns of the fifth and fourteenth amendments are not precisely parallel, however. See Max Daetwyler Corp., 762 F.2d at 294 n. 4 ("[I]nterstate federalism concerns which animate fourteenth amendment due process analysis under International Shoe and its progeny are diminished in the fifth amendment context.") (citations omitted). See also Lilly, Jurisdiction Over Domestic And Alien Defendants, 69 Vand.L.Rev. 85 (1983)
 
 
 [10]
 When determining jurisdiction over an alien defendant, courts disagree whether the defendant's aggregate contacts with the United States or the defendant's contacts with the particular state are to be considered. Compare Max Daetwyler Corp., 762 F.2d at 293-94 (aggregate national contacts may be appropriate), In re Deak, 63 B.R. at 430 n. 8 (defendant's national contacts appropriately considered a jurisdictional base where federal statute provides for nationwide service) with Pioneer Properties, Inc., 557 F.Supp. at 1359 (court only considered defendant's contacts with forum state in determining jurisdiction); In re A & W Publishers, Inc., 39 B.R. at 667-68 (court looked to defendant's contacts with forum state to determine jurisdiction)
 In the case at bar we need not determine which view is correct. Granfinanciera and Medex conducted numerous international business transactions utilizing their bank accounts in Miami, New York, Chicago, and San Francisco. The action was brought in the United States District Court for the Southern District of Florida. The transfers out of which this action arose were made from debtor's United States bank accounts in New York and Miami in United States currency, to the Miami bank accounts of each defendant. Sufficient contacts exist in this case with the entire United States and with the forum state.
 
 
 [11]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [12]
 28 U.S.C. Sec. 1603(b) reads:
 An "agency or instrumentality of a foreign state" means any entity--
 (1) which is a separate legal person, corporate or otherwise, and
 (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
 (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.
 
 
 [13]
 See 28 U.S.C. Sec. 1604
 
 
 [14]
 "The right to a jury trial in bankruptcy matters is not very clear." Cowans on Bankruptcy, Sec. 1.6 (1986)
 
 
 [15]
 Katchen v. Landy remains good law as evinced by its recent invocation as precedent by the Supreme Court in sustaining the jurisdiction of the Commodity Futures Trading Commission over state law counterclaims in reparation proceedings. Commodity Futures Trading Commission v. Schor, 478 U.S. 833, 106 S.Ct. 3245, 3258, 92 L.Ed.2d 675 (1986)
 
 
 [16]
 The recent abrogation of Bankruptcy Rule 9015, the mechanism by which a bankruptcy court may have conducted a jury trial, casts doubt that the possibility exists. See Committee Note to Abrogation of Rule 9015, Proposed Bankruptcy Rule, reprinted in 2 W.H. Drake & A.L. Mullins, Jr., Bankruptcy Practice Appendix C, AC-178 (1987) (amendments became effective August 1, 1987)